1
2
3
4
5
6
7
8
9
10

**United States District Court**
For the Northern District of California

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TONY A. LUCERO,

      Plaintiff,

    v.

AMERICAN HOME MORTGAGE,

      Defendant.

_____/

No. C 09-02879 CRB

**ORDER GRANTING MOTION TO DISMISS**

      This case involves a refinancing loan and allegations of impropriety by various institutions, largely in connection with the loan's origination.  Now pending is a motion to dismiss the Second Amended Complaint (SAC) filed by the subsequent assignee of the Deed of Trust (Citibank), its substituted trustee (AHMSI Default), and the loan servicer (AHMSI). Because the SAC fails to state a claim against these Defendants, the Court will grant the motion, with prejudice.

**I.      BACKGROUND**

      In July 2004, Plaintiff purchased a home for $352,000 in Oakley, California.  SAC ¶ 1.  The home was 100% financed and Plaintiff's annual income at the time was about $61,000.  Id.  By the next year, Plaintiff had refinanced the loan for this home and purchased a second property as an investment.  Id. ¶ 2.  In July 2006, Plaintiff refinanced the Oakley property again.  Id. ¶ 2.  Less than a year after the July 2006 refinancing, Plaintiff owed more

than the market value of the properties. Id. ¶ 3. The July 2006 refinancing "is the subject matter of [the SAC]." Id. ¶ 5.

Plaintiff alleges that his "personal housing bubble certainly would have burst . . . even if the housing market had stayed strong" because he was "steered into an inappropriate exotic mortgage package, an interest-only loan, that created an illusion that the mortgage was within his financial means." Id. ¶ 4. The terms of the loan included interest-only payments for five years with an interest rate that adjusted monthly, and a "pick a pay" option, allowing him to make lower monthly payments resulting in negative amortization. Id. ¶ 5. Plaintiff alleges that "further unlawful conduct was used in the creation of the Subject Loan," including intentionally misleading origination documents that were doctored without his knowledge to make him look like a more attractive loan candidate. Id. ¶ 6.

Plaintiff defaulted, and on April 8, 2009, a trustee sale was conducted in which Defendant Citibank purchased the subject property. Id. ¶ 8.

Plaintiff initially filed suit in state court in June 2009. See dckt. no. 1 at 1. Defendants removed. Id. Defendants' first motion to dismiss was to be heard on August 21, 2009. See dckt. no. 9. When Plaintiff failed to file an opposition, this Court vacated the hearing date and issued an order to show cause. See dckt. no. 11. Plaintiff responded, stating that he had not anticipated removal from state court and that his counsel was not admitted to practice in federal court. See dckt. no. 13. Though he initially sought to remand the case, he subsequently filed a non-opposition to removal, acknowledging the Court's diversity jurisdiction. See dckt. no. 15.

Plaintiff then filed a First Amended Complaint (FAC) on October 23, 2009. See dckt. no. 26. On January 8, 2010, the Court dismissed the FAC without prejudice for failure to prosecute, and provided Plaintiff 20 days to amend. See dckt. no. 35. Plaintiff failed to do so, and so on April 29, 2010 the Court dismissed the case with prejudice. See dckt. no. 37. In May 2010 Plaintiff moved to set aside the judgment, and attached the SAC. See dckt. no. 39. The SAC alleges (1) fraud; (2) breach of fiduciary duty; (3) breach of good faith and fair dealing; (4) negligence; (5) unjust enrichment; (6) violation of TILA; (7) wrongful

United States District Court
For the Northern District of California

2

**United States District Court**
For the Northern District of California

1  foreclosure; (8) violation of California Business & Professions Code section 17200; and (9)

2  tortious interference with economic advantage. <u>See</u> <u>id.</u> Ex. 2. The Court granted Plaintiff's

3  motion to set aside judgment in July, 2010. <u>See</u> dckt. no. 46. In February 2011, Defendants

4  AHMSI Default, AHMSI, and Citibank moved to dismiss the SAC. <u>See</u> dckt. no. 57.

5  **II.     LEGAL STANDARD**

6         Under Rule 12(b)(6), a party may move to dismiss a cause of action which fails to

7  state a claim upon which relief can be granted. On a motion to dismiss, all well-pleaded

8  allegations of material fact are taken as true and construed in the light most favorable to the

9  non-moving party. <u>Wyler-Summit P'ship v. Turner Broad. Sys., Inc.</u>, 135 F.3d 658, 661 (9th

10  Cir. 1998). To survive a Rule 12(b)(6) motion to dismiss, the complaint must state a claim to

11  relief that is "plausible on its face." <u>Ashcroft v. Iqbal</u>, --- U.S. ----, ----, 129 S.Ct. 1937,

12  1949, 173 L.Ed.2d 868 (2009). A claim has "facial plausibility" when the pleaded factual

13  allegations "allow the court to draw the reasonable inference that the defendant is liable for

14  the misconduct alleged." <u>Id.</u>  In the context of fraud claims, Rule 9(b) requires a party to

15  "state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge,

16  and other conditions of a person's mind may be alleged generally." To comply with Rule

17  9(b), a plaintiff must plead "with particularity" the time and place of the fraud, the statements

18  made and by whom made, an explanation of why or how such statements were false or

19  misleading when made, and the role of each defendant in the alleged fraud. <u>KEMA, Inc. v.</u>

20  <u>Koperwhats</u>, No. C-09-1587 MMC,  2010 WL 3464737, at *3 (N.D. Cal. Sept. 1, 2010)

21  (citations omitted).

22         Under Federal Rule of Civil Procedure 12(f), the Court may strike from a pleading

23  "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

24  Immaterial matter is defined as "statements that do not pertain, and are not necessary, to the

25  issues in question." <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir. 1993). A motion

26  to strike may be granted if allegations are so unrelated to a plaintiff's claims as to be

27  unworthy of any consideration, and their presence in the pleading will be prejudicial to the

28  moving party. <u>Id.</u> at 1527-28.

3

**United States District Court**
For the Northern District of California

1    **III.    DISCUSSION**

2        **A.    <u>Motion to Dismiss</u>**

3        The SAC includes causes of action for (1) fraud; (2) breach of fiduciary duty; (3)

4    breach of good faith and fair dealing; (4) negligence; (5) unjust enrichment; (6) violation of

5    TILA; (7) wrongful foreclosure; (8) violation of California Business & Professions Code

6    section 17200; and (9) tortious interference with economic advantage.  However, in his

7    Opposition, Plaintiff states that he does not oppose the Motion to Dismiss as to the breach of

8    fiduciary duty, breach of good faith and fair dealing, and unjust enrichment claims.

9    Accordingly, the Motion to Dismiss as to those claims will be GRANTED with prejudice.

10   This Order will now address the remaining six causes of action.

11            **1.    Fraud**

12       The Complaint alleges that the Defendants engaged in actual fraud, misrepresentation

13   and concealment "during the origination of the loan, including the terms of the loan and

14   Plaintiff's ability to repay."  SAC ¶ 82.  Under Fed. R. Civ. P. 9(b), "[i]n alleging fraud . . ., a

15   party must state with particularity the circumstances constituting fraud."  To meet this

16   standard, the complaint must include "particularized allegations of the circumstances

17   <u>constituting</u> fraud," including the "time, place, persons, statements made, [and an]

18   explanation of why or how such statements are false or misleading."  <u>In re GlenFed, Inc. Sec.</u>

19   <u>Litig.</u>, 42 F.3d 1541, 1547-48 n.7 (9th Cir. 1994) (en banc) (superceded by statute on other

20   grounds).  A plaintiff bringing a fraud action against a corporation must allege the "names of

21   the persons who made the allegedly fraudulent representations, their authority to speak, to

22   whom they spoke, what they said or wrote, and when it was said or written."  <u>Tarmann v.</u>

23   <u>State Farm Mut. Auto Ins. Co.</u>, 2 Cal. App. 4th 153, 157 (1991).

24       The Complaint fails to meet this standard.  Though it alleges that Plaintiff "reasonably

25   relied on the misrepresentations and nondisclosures," that Plaintiff would not have entered

26   into the loan had he known the truth, and that he suffered damages as a result of his reliance,

27   SAC ¶¶ 85-87, the Complaint does not include the "time, place, persons, statements made,

28   explanation of why or how such statements are false or misleading."  The most specific

4

United States District Court
For the Northern District of California

descriptions the Complaint gives of representations dealing with the July 2006 loan are that
"the disclosures required under [TILA] and [RESPA] were grossly inaccurate," failing to
account for a $8,446.88 fee paid to the broker, id. ¶ 44, and that the information listed on the
loan application "was false and contrary to the accurate and truthful information and
documentation provided by Plaintiff," making Plaintiff look like a more attractive loan
candidate than he was; such information "was intentionally and fraudulently misrepresented
.. . in order to qualify Plaintiff for the Subject Loan," id. ¶¶ 47-48.

Logically, the allegations as to the loan application cannot be a basis of a fraud action
by Plaintiff, as Plaintiff knew the "accurate and truthful information" about his finances and
did not rely on the false information– if anything, the lenders might have a claim for fraud.
As for the failure to account for the broker fee, it is unclear how that alleged fraud could be
attributable to the moving Defendants.  Any representations about the origination of the loan
took place before the moving Defendants were involved.  Defendants were not responsible
for the July 2006 loan that was brokered well before they were involved, and that is the
"subject matter of this Complaint."  See SAC ¶ 5.

Plaintiff argues, however, that the moving Defendants are liable for the origination of
the loan because they

> aided and abetted the mortgage broker in perpetration of the fraud against Plaintiff,
> acting in concert as part of a common scheme to generate predatory loans for lucrative
> sale on the secondary market.  These Defendants provided substantial assistance in the
> preparation of the fraud by, inter alia, creating a demand for stated income loans and
> option arms and failing to adequately screen loan documents.

Id. ¶ 83.  This allegation is both impermissibly vague and implausible; creating a demand for
loans is hardly aiding and abetting.  As this is now Plaintiff's third Complaint, the Court
finds that amendment would be futile, and dismisses this claim with prejudice.  See Chaset v.
Fleer/Skybox Intern., LP, 300 F.3d 1083, 1088 (9th Cir. 2002).

## 2.    Negligence

The claim for negligence is not alleged against these Defendants.  See SAC ¶¶ 104-
111.

//

5

**3.     TILA**

The Complaint raises an unusual TILA claim: it alleges that "the inaccurate disclosure of the true cost of financing the Subject Loan created an extended right of rescission under 15 U.S.C. § 1635(f)," that "Plaintiff exercised his legal right to rescind the Subject Loan prior to the Trustee Sale," and that "Defendants refused to acknowledge or respond to Plaintiff's letters, and proceeded with foreclosure." Id. ¶¶ 119-120.  Plaintiff then uses the rejected rescission as a basis to demand damages under 15 U.S.C. § 1635(g). Id. ¶ 121.

One threshold issue which neither party addresses is that 15 U.S.C. § 1635, which provides for a right of rescission, does not apply to "a transaction which constitutes a refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property." See 15 U.S.C. § 1635(e)(2); Kucera v. Citizens Bank & Trust Co., 754 F.2d 280, 281 (8th Cir. 1985) ("the . . . refinancing transactions are exempt from coverage under the right-of-rescission"); and Ordonez v. Saxon Mortg. Servs.., Inc., No. CV F 08-1148 LJO GSA, 2009 WL 395488 at *6 (E.D. Cal. Feb. 17, 2009) (dismissing TILA rescission cause of action based on refinancing loan).  Given Plaintiff's assertion that "[t]he loan created in July 2006 by [ABC] to refinance Plaintiff's Oakley residence is the subject matter of this Complaint," SAC ¶ 5, it would appear that section 1635(e)(2) applies.

Notwithstanding that section, Defendants argue that the TILA claim should be dismissed because "to rescind, a borrower must tender the amount borrowed." Mot. at 9 (citing Farmer v. Countrywide Fin. Corp., No. SACV08-1075 AG (RNBx), 2009 WL 1530973, at *5 (C.D. Cal. May 18, 2009) ("This court embraces the policy that a plaintiff cannot state a claim for rescission under TILA without at least alleging that she is financially capable of returning the principal of the loan")).  This Court concurs.  While the SAC alleges that Plaintiff was "ready, willing and able to surrender the property as tender [but] because AHMSI failed to comply with the requirements of 1635(b), Plaintiff's obligation to tender

United States District Court
For the Northern District of California

1  did not arise," SAC ¶ 60, this is not sufficient; he must allege that he is able to return the

2  principal of the loan, and he has not done so.[1]

3          In addition, it is doubtful that counsel's September 12, 2008 letter purporting to

4  rescind the loan constituted an unequivocal notification of rescission under TILA.  <u>See</u> 12

5  C.F.R. § 226.23(a)(2) (emphasis added) ("To exercise the right to rescind, the consumer <u>shall</u>

6  <u>notify the creditor of the rescission</u> by mail, telegram or other means of written

7  communication").  Plaintiff's own characterization of the letter describes only a conditional

8  intent to rescind.  <u>See</u> SAC ¶ 57 (describing letter from counsel relaying "Plaintiff's desire to

9  negotiate a loan modification rather than seek legal redress" and stating "Plaintiff's <u>intent to</u>

10  <u>rescind</u> if AHMSI proceeded with foreclosure") (emphasis added).

11          For each of these reasons, the Court dismisses the TILA claim with prejudice.

12                    **4.    Wrongful Foreclosure**

13          The Complaint further alleges that Defendants "violated California Civil Codes

14  governing non-judicial foreclosure."   SAC ¶123.  It argues first that California Civil Code §

15  2932.5 required that the assignee, Defendant Citibank, "duly acknowledge and record an

16  assignment of deed of trust prior to exercising the power of sale," but that the assignment of

17  interest in Citibank was "not recorded until just prior to the Notice of Trustee Sale."  <u>Id.</u> at ¶

18  79.  Even according to the language of the Complaint, Citibank's assignment of interest was

19  recorded prior to the sale, thus complying with the statute.  <u>See</u> <u>Reynoso v. Paul Financial,</u>

20  <u>LLC</u>, No. 09-3225 SC, 2009 WL 3833298, at *3 (N.D. Cal. Nov. 16, 2009) ("All necessary

21  documents were recorded by the time the trustee's sale occurred").  This is not a basis of

22  wrongful foreclosure claim.

23          The Complaint's second argument on this point is that under California Civil Code §

24  2934a(b), Defendants were required to mail a copy of the Substitution of Trustee at the same

25  time as the default notice, but did so over a month later.  <u>Id.</u> ¶ 124.  Even if this rose to the

26  level of actionable conduct, Plaintiff cannot succeed in an action for wrongful foreclosure

27  _____

28          [1] As defense counsel reasoned at the argument, if the law was as Plaintiff claims, then a borrower
could get a loan, buy a house, live in it for a few years, and then, if the house was underwater, simply
give the house back– a potential windfall to the borrower.

United States District Court
For the Northern District of California

without tendering his debt.  See Williams v. Countrywide Home Loans, Inc., No. C 99-0242 SC, 1999 WL 740375, at *2 (N.D. Cal., Sept. 20, 1999) ("It is well settled law in California that an action to set aside a trustee's foreclosure sale under a deed of trust must be accompanied by a valid and viable tender of payment of the indebtedness owing.") (citing Karlsen v. Amercian Sav. & Loan Ass'n., 15 Cal. App. 3d 112, 117 (1971)); and Yazdanpanah v. Sacramento Valley Mortg. Group, No. C 09-02024 SBA, 2009 WL 4573381, at *7 (N.D. Cal. Dec. 1, 2009) ("When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secure debt to maintain any cause of action for wrongful foreclosure.").  Though Plaintiff protests that he is not seeking to rescind the trustee sale, Opp. at 6, and instead asks for damages for this cause of action, a challenge to the validity of a trustee's sale is a suit in equity, and requires that a Plaintiff do equity.  See Miller & Starr, California Real Estate 3D § 10:212 (2009).  Because Plaintiff has not alleged that he has the ability to tender, this claim is also dismissed with prejudice.

### 5.        California Business & Professions Code § 17200

A claim under section 17200 is "derivative of some other illegal conduct or fraud committed by a defendant, and '[a] plaintiff must state with reasonable particularity the facts supporting the statutory elements of the violation.'"  See Benham v. Aurora Loan Servs., No. C-09-2059 SC, 2009 WL 2880232, at *4 (N.D. Cal. Sept. 1, 2009).  The gravamen of the Complaint is the origination of the July 2006 loan; the moving Defendants were not involved in that origination, and Plaintiff has failed to allege in a non-conclusory manner how the moving Defendants are liable for the lender's conduct at origination.  Accordingly, this conduct cannot be the basis for a UCL claim against the moving Defendants, and this claim is also dismissed with prejudice.

### 6.        Tortious Interference with Economic Advantage

The Complaint alleges that although Plaintiff alerted AHMSI to incidents of fraud, Defendants foreclosed on Plaintiff's property, thus tortiously interfering with "Plaintiff's right and opportunity to negotiate a meaningful modification from the true note holders of

United States District Court
For the Northern District of California

1   their loans."  SAC ¶¶ 132-136.  To state a claim for interference with economic advantage, a

2   plaintiff must allege, among other things, an economic relationship with a third party, with

3   which the defendant interferes.  See Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th

4   1134, 1153-54 (2003).  Because the law is clear that a party cannot interfere with its own

5   contract, see Rachford v. Air Line Pilots Ass'n., No. C 03-3618PJH, 2006 WL 1699578, at

6   *5 (N.D. Cal. June 16, 2006) ("Only a stranger to a contract may be liable for tortious

7   interference"), Plaintiff hedges in his Opposition, asserting: "Defendants interfered with the

8   relationship between Plaintiff and the investors."  Opp. at 11.

9         This fails to state a viable claim again the moving Defendants for two reasons.  First,

10  it runs counter to the earlier assertion in the Complaint that in response to his counsel's letter,

11  Plaintiff received a letter from AHMSI on November 12, 2008 "requesting that Plaintiff call

12  to discuss possible alternatives to foreclosure."  SAC ¶ 61.  Second, despite Plaintiff's novel

13  argument, the "true note holder" of his loan– with which Defendants were alleged to have

14  interfered– was Citibank, not an amorphous group of "investors."   Plaintiff's own Complaint

15  states that Citibank "purports to be the beneficiary of the Subject Deed of Trust."  Id. ¶ 14.

16  Though not attached to the Complaint, Defendants ask the Court to take judicial notice of the

17  Assignment of Deed of Trust.  See RFJ Ex. 4.  The Court does so.  See Marder v. Lopez, 450

18  F.3d 445, 448 (9th Cir. 2006) ("court may consider evidence on which the complaint

19  'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to

20  the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the

21  12(b)(6) motion").  That assignment names Citibank, not "investors."

22        Defendants cannot interfere with themselves.  This claim is therefore also dismissed

23  with prejudice.

24        **B.    Motion to Strike**

25        Defendants further seek to have all mention of punitive damages stricken from the

26  complaint.  Mot. at 12.  Under Federal Rule of Civil Procedure 12(f), the Court may strike

27  from a pleading any "redundant, immaterial, impertinent, or scandalous matter."  In Rosales

28  v. Citibank, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001), the district court recounted the

1    Ninth Circuit's longstanding disdain for strike motions, "because they are often used as

2    delaying tactics and because of the limited importance of pleadings in federal practice." Id.

3    The Court agrees and finds that the Complaint does not rise to the level of immateriality or

4    impertinence.  The Motion to Strike is denied.

5    **IV.    CONCLUSION**

6           For the foregoing reasons, the Court GRANTS the Motion to Dismiss with prejudice,

7    and DENIES the Motion to Strike.

8           **IT IS SO ORDERED.**



Dated: March 21, 2011                          _____
                                                CHARLES  R. BREYER
                                                UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California